409 P.2d 299

**CITY OF GLENDALE, a municipal corporation, Appellant,**

v.

**ARIZONA SAVINGS AND LOAN ASSOCIATION, IN RECEIVERSHIP, an Arizona corporation, Union Title Company, in Receivership, George A. Bushnell, Director of Insurance, State of Arizona, Mr. W. and Mr. R. Developers, an Arizona corporation, Zee Investment Corp., an Arizona corporation, Commerce Development Co., an Arizona corporation, and Retdel Realty Corporation, a Delaware corporation, Appellees.**

I CA–CIV 127.

Court of Appeals of Arizona. ·

Dec. 31, 1965.

Kenneth Biaett, Phoenix, for appellant.

Perry & Smith, by Ralph G. Smith, Jr., Phoenix, for appellee Arizona Savings & Loan Ass'n.

Cox & Cox, by Alfred S. Cox, Phoenix, for Union Title Co.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by John P. Otto, Phoenix, for appellees Zee Inv. Corp., and Commerce Development Co.

Carson, Messinger, Elliott Laughlin & Ragan, by Robert W. Holland, Phoenix, for appellee Retdel Realty Corp.

Perry & Perry, Phoenix, for appellee Mr. W. and Mr. R. Developers.

MOLLOY, Judge.

Seven original owners of a tract of land outside the limits of the City of Glendale

entered into an agreement with the city whereby the city agreed to extend its sewage trunk line up to the tract in return for a promise by the owners to either effect 250 connections to the sewer line within eighteen months or in lieu thereof to make certain agreed payments. Upon breach of the agreement by the owners, the city, by amended complaint, sought to recover these agreed payments from the seven original owners and the Elson Development Company, which owned the tract at the time of the complaint. The seven moved to dismiss on the grounds that they were no longer owners, and the motion was granted. The Arizona Supreme Court, however, reversed the decision of the trial court and held that the seven remained liable on the contract after conveying the land. City of Glendale v. Barclay, 94 Ariz. 358, 385 P.2d 230 (1963).

While the appeal was pending to the Supreme Court, six additional companies, appellees herein, acquired interests in the tract. On remand, appellant's second amended complaint included these additional parties. Appellees moved for judgments on the pleadings, which were granted. Appellant has now appealed from these judgments.

Appellant contends that its second amended complaint stated a cause of action as to the successors in interest to the original party defendants and that therefore judgment on the pleadings should not have been granted as to these defendants. It is the appellant's position that the complaint poses a cause of action under either one of two theories: (1) a covenant running with the land, binding the appellees as subsequent titleholders, or (2) equitable relief, either on the theory of an equitable lien to which appellees' title was subject or on the theory of an equitable servitude.

No material allegation of appellant's complaint was denied by appellees' answers except those portions alleging the conclusions that the original contract created a covenant running with the land and a lien in favor of appellant. There was no allegation that the appellees contractually assumed the obligation of these payments. Judgment on the pleadings was therefore appropriate if the contract, attached to the complaint, created neither a running covenant nor an equitable obligation on the land. Young v. Bishop, 88 Ariz. 140, 353 P.2d 1017 (1960).

The relevant provisions of the contract are as follows:

\* \* \* \* \* \*

"2. The City is desirous of extending the usage of its sewerage facilities to the territory near and lying outside of its City limits.

\* \* \* \* \* \*

"6. The Co-tenants contemplate the construction of a shopping center and subdivision of land into homesites and the construction of homes on portions of the described property.

"7. The Co-tenants are desirous of having the City extend sewer trunk lines to serve the above mentioned real property.

\* \* \* \* \* \*

"CO-TENANTS AGREE:

"14. To build and connect to said sewerage facilities not less than 250 houses within eighteen months after the effective date of this contract or that in lieu thereof the Co-tenants will pay to the City each month an amount equal to $1.50 per month after each house less than the said 250 houses connected to said sewerage facilities, and shall continue such monthly payments until the houses built and connected to said sewer equal 250 in number. Thereafter such payment shall be due from the individual users in conformity with the effective schedule at all times.

"15. To provide deed restrictions in the grant of each lot or parcel of said subdivision upon its sale, restricting each grantee and subsequent grantee from the usage of septic tanks and cesspools. That upon the sale of each lot or parcel Co-tenants will notify the

City as promptly as possible of such sale and the contemplated escrow in connection therewith. After said sale the City shall have the right to charge the sewer service charges hereinafter established and shall secure from each purchaser the execution of an agreement for sewer service charges of the City of Glendale in substantially the same form as that hereinafter set forth as Exhibit A of this agreement.

\*     \*     \*     \*     \*     \*

"IT IS MUTUALLY AGREED:

"17. Obligations to the City shall apply only to the particular lot or parcel of property subscribing to said service and no liens or charges upon said property shall accrue to the City until such time as the lot or parcel is connected with the mains or main line extensions hereinabove contemplated.

\*     \*     \*     \*     \*     \*

"21. The Co-tenants may from time to time convey portions of the property to other persons, provided that the terms and conditions of this agreement shall be a condition of any such conveyance.

"22. Time shall be of the essence of this agreement and the provisions hereof shall be binding upon the parties hereto, their heirs, executors, administrators, successors or assigns."

The grounds of relief urged by the appellant share a common requirement: intention of the parties. For a covenant to run with the land and impose its burden upon a successor in interest, there must be a discoverable intention on the part of the covenantors that the land be bound. The Restatement of the Law of Property, which will be followed in Arizona in the absence of controlling precedent, Ingalls v. Neidlinger, 70 Ariz. 40, 216 P.2d 387 (1950) states:

"The successors in title to land respecting the use of which the owner has made a promise are not bound as promisors upon the promise unless it was intended by the parties to the promise that they should be so bound." Restatement, Property, § 531, p. 3196.

Equity requires no less. Equity will sometimes subject successors in interest to the burdens imposed on land by their predecessors under a theory of equitable lien. In Arizona the existence of an equitable lien is determined by the intention of the contracting parties as manifested in the contract taken as a whole. Stephen v. Patterson, 21 Ariz. 308, 188 P. 131 (1920); Moeur v. Farm Builders Corp., 35 Ariz. 130, 274 P. 1043 (1929). Appellant's contention that the contract created an equitable servitude in its favor is similarly dependent on a showing of the contracting parties' intent. Restatement, Property § 539($h$).

We therefore examine the contract to determine whether there was an intent to charge this land or its succeeding owners with the obligation to pay these "in lieu" charges. By its terms, the contract imposed certain restrictions which were patently intended to attach to the land and bind subsequent titleholders (clause #15, supra). These restrictions do not include an obligation to pay the charges which are the subject of this action. "Liens or charges upon such property" were specifically limited to particular lots or parcels subscribing for service and only after connection to the main lines. (Clause #17, supra.) No other lien was provided for, specifically or inferentially. Though the contract was to be a "condition" of the subsequent conveyance of this property (clause #21, supra), and was to be binding upon "successors" (clause #22, supra), these provisions do not impair the specific provisions of the contract imposing and negating obligations upon the land. Subsequent purchasers should be able to rely upon these express provisions.

Inasmuch as the pleadings filed do not reveal an intention to bind either this land or its succeeding owners to pay these "in lieu" charges, we hold that the lower court correctly granted judgment on the pleadings. Judgment affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.