NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

ERIC MAJOR NORWOOD, *Petitioner/Appellant*,

*v.*

MONIFA MOORE, *Respondent/Appellee*.

No. 1 CA-CV 22-0652 FC
FILED 7-25-2023

Appeal from the Superior Court in Maricopa County
No. FC2021-001791
The Honorable Tracey Westerhausen, Judge

**REVERSED AND REMANDED**

APPEARANCES

Eric Major Norwood, Chicago, Illinois
*Petitioner/Appellant*

Monifa Moore, Tolleson
*Respondent/Appellee*

---

**MEMORANDUM DECISION**

Chief Judge David B. Gass delivered the decision of the court, in which Judge Brian Y. Furuya joined, and Judge Andrew M. Jacobs specially concurred.

---

**G A S S**, Chief Judge:

¶1        Eric Major Norwood filed two cases. The superior court treated the first as a petition for third-party visitation because Norwood did not seek a paternity finding. In the second, Norwood specifically petitioned for paternity, legal decision-making, parenting time, and child support. The superior court *sua sponte* dismissed the second petition, ruling *res judicata*—claim preclusion—barred it. We reverse and remand because the superior court's earlier third-party visitation order is not preclusive on the issues of paternity, legal decision-making, parenting time, and child support.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        The child at issue was born in July 2016. Norwood and the child's genetic mother never married, and Norwood is not the child's genetic father. Even so, Norwood and mother listed Norwood as the father on the child's birth certificate. And in December 2016, Norwood and mother signed a Voluntary Acknowledgment of Paternity (the Acknowledgment) under A.R.S. § 25-812 and filed it with the Arizona Department of Economic Security (ADES).

**I.        Norwood's First Petition**

¶3        In March 2021, Norwood petitioned the superior court to establish legal decision-making, parenting time, and child support, but not paternity. Instead, he claimed the birth certificate established his paternity by listing him as the child's father. Relying on A.R.S. §§ 25-403 and -501, Norwood asked the superior court to award him joint legal decision-making authority. Along with child support, Norwood also sought an "essentially equal long-distance parenting plan," without naming himself or mother as the primary residential parent.

¶4        Mother used a court-provided form titled "Response to Petition to Establish Paternity" to respond to and oppose Norwood's first petition. Using that form, mother denied Norwood's paternity in several

ways. First, she said Norwood "is not the biological father" and "[p]aternity was not established at [the child's] birth." Second, she checked a box saying she and Norwood "did not sign an Affidavit or Acknowledgment of Paternity" acknowledging Norwood as the father. Third, she marked a box saying the parties completed DNA testing, but she did not disclose the results or supply a copy of the test.

¶5            In her response, mother asked the superior court to declare Norwood is not the child's genetic father. She also asked the superior court to grant her sole legal decision-making authority, declare her the primary residential parent, and award Norwood no parenting time.

¶6            The superior court held a resolution management conference. During that conference, the superior court set a trial date and issued temporary orders. Mother did not follow the temporary orders.

¶7            At the trial, both parties testified but did not mention the Acknowledgment. Norwood testified about his relationship and contact with the child, ability to travel to Arizona to be with the child, and the times of year he wanted the child with him in Illinois. Norwood acknowledged he is not the child's genetic father but maintained his paternity was established because the child's birth certificate listed him as the father. Norwood provided the birth certificate as an exhibit.

¶8            Mother objected to the child spending time with Norwood, especially in Illinois, because she already was giving enough to "somebody that's not biologically [the child's] father." Mother then said she knows the identity of the child's alleged genetic father. She acknowledged the alleged father was not currently involved in the child's life but claimed he had tried on occasions to be involved and wanted to be on the child's birth certificate after completing a DNA test. Mother also confirmed she never petitioned to establish paternity for the child—either for the alleged genetic father or for Norwood. At the end of the trial, the superior court noted the parties had "certainly facilitated parenting time with the other parent."

¶9            The superior court later ruled the child's birth certificate did not establish Norwood's paternity. *See Castillo v. Lazo*, 241 Ariz. 295, 298 ¶ 10 (App. 2016) (holding a birth certificate is not equivalent to a signed voluntary acknowledgment of paternity filed with ADES under A.R.S. § 25-812). The superior court then ruled Norwood "did not file a petition to establish paternity" and said he "should have filed a petition for third-party visitation" under A.R.S. § 25-409.C.2. The superior court then treated Norwood's first petition "as one under the third-party visitation statute."

After considering the statutory visitation factors, the superior court awarded Norwood at least two consecutive weeks of visitation with the child in June at Norwood's expense.

**¶10**      Norwood moved to alter or amend the judgment under Rule 83(a)(1), Arizona Rules of Family Law Procedure. He attached the Acknowledgment he and mother signed and filed with ADES. Norwood argued the superior court erred because he met the presumption for paternity under A.R.S. §§ 25-812.A.1 and -814.A.4 and established he is the child's legal father. As a result, Norwood argued he had no reason to request relief under the third-party visitation statute. *See* A.R.S. § 25-409.C. Norwood argued he and mother filed the Acknowledgment with ADES, so the Acknowledgment controlled even though he had not filed it with the superior court.

**¶11**      While the motion to alter or amend the judgment was pending, Norwood appealed. This court stayed the appeal and revested jurisdiction in the superior court to consider Norwood's motion. The superior court denied that motion in a signed order under Rule 78(c), Arizona Rules of Family Law Procedure. The superior court noted Norwood had not previously provided the Acknowledgment and denied his motion as "essentially too little, too late." Norwood did not appeal that order, and this court dismissed his appeal when he did not file an opening brief.

## II.    Norwood's Second Petition

**¶12**      Norwood then petitioned to establish paternity, legal decision-making, parenting time, and child support. He moved for summary judgment on the paternity issue and attached the fully executed and filed Acknowledgment. Mother—who in responding to the first petition incorrectly told the superior court she and Norwood had not executed and filed the Acknowledgment—did not oppose Norwood's motion.

**¶13**      Even so, the superior court denied Norwood's unopposed motion for summary judgment and petition for paternity in a signed final judgment. The court *sua sponte* analyzed whether Norwood's claim in his petition for paternity was the same as the claim in his earlier petition. Applying the "same evidence" test, the superior court found paternity "was an inherent issue" in the first petition and concluded claim preclusion barred the second petition. *See Pettit v. Pettit*, 218 Ariz. 529, 531 ¶ 4 (App. 2008).

4

**¶14** This court has jurisdiction over Norwood's timely appeal under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-2101.A.1 and -120.21.A.1.

## ANALYSIS

**¶15** Norwood argues the superior court abused its discretion when it *sua sponte* ruled his first petition for legal decision-making, parenting time, and child support orders precluded his second paternity petition. Though mother did not oppose Norwood's appeal, we exercise our discretion and decline to treat her failure as a confession of error. *See In re Marriage of Diezsi*, 201 Ariz. 524, 525 ¶ 2 (App. 2002). On the merits, we agree with Norwood and reverse.

## I. Norwood established paternity under A.R.S. § 25-812.

**¶16** This court reviews a grant of summary judgment *de novo*. *Palmer v. Palmer*, 217 Ariz. 67, 69 ¶ 7 (App. 2007). Summary judgment is proper only if the moving party shows no genuine dispute of material fact. *See id.* Here, summary judgment comes down to whether Norwood followed A.R.S. § 25-812. He did.

**¶17** Putative parents can use an acknowledgment of paternity to establish the paternity of a child born out of wedlock if: (1) both signed the acknowledgment; (2) their signatures are notarized or witnessed; and (3) they file the acknowledgment with ADES. *See* A.R.S. § 25-812.A.1, .D. The Acknowledgment here met all three requirements. Norwood and mother signed the Acknowledgment, an ADES employee witnessed their signatures, and they filed it with ADES. And Norwood provided an ADES-certified copy of the Acknowledgment to the superior court.

**¶18** Because Norwood and the child's mother followed the statutory requirements, the Acknowledgment "has the same force and effect as a superior court judgment." *See* A.R.S. § 25-812.D. And courts must presume Norwood's signed voluntary acknowledgment of paternity is valid and binding until proven otherwise. *See Johnson v. Edelstein*, 252 Ariz. 230, 233 ¶ 13 (App. 2021).

**¶19** Only two actions can undo the legal effect of a valid acknowledgment. One or both parents may rescind an acknowledgment within 60 days. A.R.S. § 25-812.H.1. After that, a person challenging an acknowledgment has six months to seek to set aside an acknowledgment. Ariz. R. Fam. L. P. 85(c). But Rule 85(c) limits relief to instances of fraud, duress, or material mistake of fact. A.R.S. § 25-812.E. After Rule 85(c)'s six-

month period, a party must show exceptional circumstances, such as fraud on the court. *Johnson*, 252 Ariz. at 233 ¶ 14.

**¶20** Nothing here undoes the legal effect of the Acknowledgment. Mother did not challenge the Acknowledgment, the superior court did not question the Acknowledgment's veracity or correctness, and the time to challenge the Acknowledgment under A.R.S. § 25-812.E and Rule 85(c)(1) has long since expired. Neither the superior court nor any party suggested the Acknowledgment involved a fraud on the court or any other exceptional circumstance. And no evidence in this record supports such a conclusion. Instead, the Acknowledgment entitles Norwood to judgment as a matter of law. *See* A.R.S. § 25-812.E; *Johnson*, 252 Ariz. at 233 ¶ 14.

**II.    The superior court's order resolving Norwood's first petition was one for third-party visitation and is not preclusive of his second petition for paternity.**

**¶21** No doubt both Norwood and mother made mistakes in addressing the first petition, but those mistakes do not change the outcome here. Norwood asserted his belief he was the child's legal father by relying on the child's birth certificate. And as the superior court noted, Norwood did not produce a copy of the Acknowledgment until he moved to alter or amend the superior court's ruling. We also note mother incorrectly said the parties did not execute the Acknowledgment. Those mistakes understandably led the superior court to its ruling on the first petition and to consider those mistakes when it ruled on the second petition.

**¶22** The superior court treated Norwood's first petition "as one under the third-party visitation statute." That treatment fundamentally distinguishes the relief Norwood sought in the first petition from the relief he sought in the second. To establish visitation, Norwood did not need to establish his paternity, but instead he had to establish visitation would be in the child's best interests. *See* A.R.S. § 25-409.C. In deciding whether to grant visitation, the superior court had to consider the factors under subsection 25-409.E, none of which include paternity. As a result of that ruling, Norwood's second petition—which specifically sought to establish paternity—is not barred.

**¶23** Claim preclusion bars a claim when an "prior judgment on the merits was rendered by a court of competent jurisdiction and the matter now in issue between the same parties . . . was, or might have been, determined in the former action." *Peterson v. Newton*, 232 Ariz. 593, 595 ¶ 5 (App. 2013) (cleaned up). For claim preclusion to apply, there must be: "(1)

an identity of claims in the suit in which a judgment was entered and the current litigation[;] (2) a final judgment on the merits in the previous litigation[;] and (3) identity or privity between parties in the two suits." *In re Gen. Adjudication of All Rts. to Use Water In Gila River Sys. & Source*, 212 Ariz. 64, 69 ¶ 14 (2006). Relevant here, the claims of a third-party petitioning for visitation under A.R.S. § 25-409.C.2 are different from those of a putative parent seeking a judgment of paternity under A.R.S. § 25-812.

¶24 The superior court's ruling on the first petition is dispositive. The superior court ruled Norwood did not file the paternity petition he should have filed but instead filed a petition the superior court treated as a different type—one for third-party visitation. The superior court's ruling on the first petition prevented the claims in the second petition from sharing the necessary identity required for claim preclusion. As a result, the two petitions are figurative apples and oranges.

¶25 Our conclusion tracks Arizona law based on the superior court's *sua sponte* use of claim preclusion. Claim preclusion is a judicially created doctrine, which this court does not rigidly apply if its application would contravene public policy or would result in manifest injustice. *In re Marriage of Gibbs*, 227 Ariz. 403, 407 ¶ 8 (App. 2011). Though both factors appear to be present here, we need not resolve whether they would be dispositive based on our ruling.

**CONCLUSION**

¶26 We reverse the superior court's denial of Norwood's motion for summary judgment. We remand for the superior court to enter judgment in Norwood's favor on his paternity claim and to address the remaining issues: legal decision-making, parenting time, and child support.

**JACOBS**, J., specially concurring.

¶27 I concur with the result the majority reaches and the entirety of its decision except for the final sentence of paragraph 25. I write separately to emphasize that there are two independent and equally important reasons not to apply *res judicata* here: (1) there is not an identity of issues between Norwood's first and second matters; and (2) *res judicata* is a judicially-created doctrine that courts should not rigidly apply where it would contravene public policy or result in manifest injustice. *See Smith v. CIGNA HealthPlan of Ariz.*, 203 Ariz. 173, 179 ¶ 21 (App. 2002); *In re Marriage of Gibbs*, 227 Ariz. 403, 407 ¶ 8 (App. 2011).

¶28        Both components of reason (2) are present here. Section 25-812 embodies a public policy of encouraging and supporting voluntary acknowledgments of paternity. Finding *res judicata* to bar an otherwise effective acknowledgment of paternity defeats that policy. *See Smith*, 203 Ariz. at 179 ¶ 21. And as to manifest injustice, the court already recognized Norwood's strong and loving tie to the child. In the first matter before it, the court awarded Norwood extensive visitation, finding he "testified to the many activities he and [the child] have enjoyed over the years, including nerf guns, wrestling, and coloring books." The court also found in granting Norwood's prior request for visitation that "[the child] seems 'joyful' when [Norwood] calls." In short, we have a loving relationship between Norwood and the child, Norwood's unopposed motion for summary judgment as to paternity, no competing claim of paternity, and Norwood's unopposed appeal. On these facts, it would create injustice to apply *res judicata* to bar Norwood's claim. While the parties unfortunately created unnecessary difficulties for the trial court in its resolution of these issues, applying *res judicata* to bar Norwood's claim of paternity would contravene the policy of A.R.S. § 25-812, which is as important and dispositive as whether *res judicata* applies here as a mechanical matter. I would thus reverse for both reasons (1) and (2) set forth in paragraph 27.

